1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

ELLEN BROOKS,

         Plaintiff,

   vs.

RUTHE GOMEZ, et al.,

         Defendants.

Case No:  C 10-01873 SBA

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Docket 49

13
14
15
16
17
18
19
20

     Plaintiff Ellen Brooks ("Plaintiff") brings this action against Defendants arising from the management of her retirement account.  The parties are presently before the Court on Defendants Ruthe Gomez ("Gomez") and Advisory Financial Consultants, Inc.'s ("AFC") motion to dismiss.  Dkt. 49.  Plaintiff opposes the motion.  Dkt. 56.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART the motion to dismiss, for the reasons stated below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

21
22

**I.      BACKGROUND**

     **A.     Factual Summary**

23
24
25
26
27
28

     Plaintiff is a retired teacher who invested in a 403(b) retirement plan for over 30 years.  Second Am. Compl. ("SAC") ¶ 1.  AFC is a financial consulting business owned and operated by Gomez, who managed Plaintiff's investments for over thirty years, including in parts of 2007 and 2008.  Id. ¶¶ 2-3.  Gomez was also an agent or employee of

TradeRight Securities, Inc. ("TradeRight"),[1] which is a registered brokerage through which Enterprise Trust Company ("Enterprise") traded securities and made other financial investments.  Id. ¶¶ 3-4.  Legent Clearing, LLC ("Legent") is a "clearing house" that performed the traditional functions of a "clearing broker."  Id. ¶ 5.

Plaintiff generally alleges that Defendants "betrayed" her interests and breached their respective duties to her by "engaging in an elaborate fraudulent scheme to use [her investment] money as margin collateral for their own risky investments," including speculative options and short trading.  SAC ¶¶ 7, 24.  According to Plaintiff, the "intended purpose and effect of [Defendants'] acts . . . is, and has been, to defraud [her] of finances for their own benefit."  Id.

Although not entirely clear, Plaintiff alleges that her retirement account was transferred to the brokerage company Enterprise in December 2006 and then to the "clearing house" Legent on or about February 2007.  See SAC ¶¶ 10, 13-14, 19.  According to Plaintiff, Gomez and AFC failed to perform due diligence before transferring her account to Enterprise; specifically, they failed to determine whether the account was being transferred to a trustworthy business.  See id. ¶¶ 14-16, 19.[2]  In fact, Plaintiff asserts that "the company to which the accounts were being transferred had already been found to be unlawfully making trades without a license, and Gomez and AFC knew or should have known of such unlawful activities and should have refused to transfer [her] account . . . to Enterprise."  Id.

Instead, in January 2007, Gomez and AFC sent a letter to Plaintiff misrepresenting that Enterprise was a trustworthy company and would handle her account "without any significant changes."  SAC ¶ 15.  According to Plaintiff, "the intent and purpose of the

---

[1] Although named as a Defendant in this action, TradeRight has not been served or otherwise been involved in this action.

[2] Plaintiff alleges that Gomez and AFC have lost their registered representative license because they failed to make the lawful disclosures to the Securities Exchange Commission related to the transfer of Plaintiff's account and other accounts to Enterprise, TradeRight, and Legent.  SAC ¶ 39.

letter was to convey a continued sense of trust and was intended to induce [her] . . . to transfer [her] account without question."  Id.  Plaintiff alleges that Gomez and AFC failed to explain to her that the transfer of her account gave Enterprise, TradeRight, and Gomez "full discretion" to invest her funds without consulting her and without obtaining authorization or approval before making trades or otherwise disposing of her assets, thereby breaching their duty to disclose a material change to her account.  Id. ¶ 16-17.  According to Plaintiff, because her account was a "full discretion" account, each of the Defendants undertook a special relationship of trust and confidence, which imposed upon them fiduciary responsibilities to her as it provided them with full control over her account.  Id. ¶ 18.

Plaintiff claims that, soon after Gomez and AFC transferred her account to Enterprise, "Enterprise, TradeRight, Gomez and Legent swept [her] account without her knowledge or consent into an omnibus account that Defendants used as margin collateral to fund risky investments," which was unlawful and contrary to the account agreements.  See SAC ¶¶ 19, 21-22, 24-27, 36.[3]  According to Plaintiff, at the time her funds were "swept" into the omnibus account, Gomez was the registered representative that was responsible for her account, and, as such, had actual or constructive knowledge of the activities (i.e., risky investments) but failed to disclose this information to Plaintiff.  Id. ¶ 34.  Throughout 2007, Legent, TradeRight, and Gomez allegedly used the funds from Plaintiff's qualified retirement account as collateral for margin trading, including speculative options and short trading, even though they knew that the paperwork signed by Plaintiff did not permit margin trading and that the law prohibits qualified accounts to be used for margin trading. Id. ¶ 24.

---

[3] Specifically, Plaintiff alleges that, on March 2, 2007, Gomez worked with Legent and TradeRight to transfer $240,331.51 worth of Plaintiff's shares in Pioneer Fund A and $326,782.72 worth of Plaintiff's shares in Pioneer Government Income Fund A into one omnibus account at Legent.  SAC ¶¶ 25-26.  In addition, on May 30, 2007, Gomez allegedly worked with Legent and TradeRight to transfer $169,959.66 worth of Plaintiff's shares of Pioneer Equity Income Fund A into the Legent omnibus account.  Id. ¶ 27.

Plaintiff alleges that she never authorized Defendants to engage in such a trading scheme, nor did she ever become aware of the risks of margin trading or that Legent, TradeRight, and Gomez used her account as collateral for margin trading.  SAC ¶ 20.  She further alleges that Legent, TradeRight, and Gomez failed to disclose and intentionally concealed that her qualified account was being used as margin collateral and that Legent had taken a security interest in her qualified account.  Id. ¶ 30.  According to Plaintiff, the margin trading engaged in by Defendants did not and was not intended to benefit her.  Id. ¶ 33.  If the trading was unsuccessful, Plaintiff's assets were at risk.  However, if the trading was successful, the benefits would be allocated to Defendants.  See id. ¶¶ 35-36, 38.

In March 2008, a receiver was appointed for Enterprise, and Plaintiff's account was frozen.  SAC ¶ 37.  According to Plaintiff, she has only received $250,000 from the receiver out of the "approximately $600,000 she should have received."  Id.

**B.    Procedural History**

On March 5, 2010, Plaintiff commenced the instant action in the Superior Court of California, County of Alameda, against Gomez, AFC, Legent, and TradeRight, as well as TradeRight employees Kimble Mason and George Dragel.  See Compl., Dkt. 1.  On April 30, 2010, the action was removed to this Court based on federal question jurisdiction.  Notice of Removal, Dkt. 1.

On August 25, 2010, Plaintiff filed a first amended complaint ("FAC") alleging seven claims for relief.  See FAC.  Thereafter, motions to dismiss were filed by Legent and Gomez and AFC.  Dkt. 15, 16.  On December 13, 2010, the Court granted Legent's motion to dismiss in its entirety, and granted Gomez and AFC's motion to dismiss in part, while granting leave to amend those claims found to be deficient.  Dkt. 26.

On January 4, 2011, Plaintiff filed a SAC, which only names as Defendants Gomez, AFC, Legent and TradeRight.  See SAC.  The SAC alleges the same claims as alleged in the FAC: (1) fraud; (2) conspiracy to commit fraud/aiding and abetting fraud; (3) breach of fiduciary duty; (4) conspiracy to breach fiduciary duty/aiding and abetting breach of

**1** fiduciary duty; (5) negligence; (6) violation of securities laws and California Blue Sky

**2** Laws; and (7) violation of Business and Professions Code § 17200, et seq.  Id.

**3**       On August 4, 2011, this Court issued an Order staying the case for ninety (90) days.

**4** Dkt. 45.  On October 25, 2011, the parties stipulated to dismiss Legent based on a class

**5** action settlement involving Legent and Enterprise clients in the U.S. District Court for the

**6** Northern District of Illinois.  Dkt. 46.

**7**       On November 4, 2011, Gomez and AFC filed a motion to dismiss the SAC.  Dkt. 49.

**8** Plaintiff filed an opposition on March 6, 2012.  Dkt. 56.  A reply was filed on March 16,

**9** 2012. Dkt. 59.

**10** ## II.    <u>DISCUSSION</u>

**11**      **A.**    **Legal Standard**

**12**       A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

**13** plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

**14** a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

**15** 1990).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the

**16** claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  The complaint

**17** must "give the defendant fair notice of what the claim is and the grounds upon which it

**18** rests."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

**19**       In determining whether a complaint states a claim on which relief may be granted,

**20** the Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s]

**21** them in the light most favorable to the non-moving party."  <u>Daniels–Hall v. National Educ.</u>

**22** <u>Ass'n</u>, 629 F.3d 992, 998 (9th Cir. 2010).  However, the Court is not required to accept as

**23** true "allegations that are merely conclusory, unwarranted deductions of fact, or

**24** unreasonable inferences."  <u>In re Gilead Sciences Securities Litigation</u>, 536 F.3d 1049, 1055

**25** (9th Cir. 2008).  The complaint is properly dismissed if it fails to plead "enough facts to

**26** state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570.  A claim is

**27** plausible on its face "when the plaintiff pleads factual content that allows the court to draw

**28** the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft</u>

v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile.  See Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-1088 (9th Cir. 2002); see also Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (if a court dismisses the complaint, it should grant leave to amend, unless it determines that the pleading could not possibly be cured by the allegation of other facts).

**B.     Judicial Notice**

In connection with their motion to dismiss, Gomez and AFC filed a request for judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.  Dkt. 49-2.  They request the Court take judicial notice of two documents: (1) an opinion from the United States Court of Appeals for the Seventh Circuit, entitled "Securities and Exchange Commission v. Enterprise Trust Company"; and (2) a motion filed in the case Philip L. Stern, Receiver for Enterprise Trust Co. v. Legent Clearing, LLC, entitled "Receiver's Motion for Order Approving Proposed Settlement Agreement and for Ancillary Orders." Id.  Plaintiff does not object to the Court taking judicial notice of the existence of these documents.

A court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed.R.Evid. 201(b).  A court may take judicial notice of court filings and other matters of public record.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006).  Accordingly, Gomez and AFC's request for judicial notice is GRANTED.  The Court notes, however, that it does not take judicial notice of the veracity of any arguments or facts presented in the documents subject to judicial notice.  See Wyatt v. Terhune, 315 F.3d 1108, 1114 n. 5 (9th Cir. 2003) (factual findings in one case ordinarily

are not admissible for their truth in another case through judicial notice); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 690 (9th Cir. 2001) (a court may take judicial notice of another court's opinion, but not of the truth of the facts recited therein).

### C.    Motion to Dismiss

#### 1.    Fraud Claim

The SAC alleges facts that sound in fraud and fraudulent concealment.  Under California law, the elements of a claim for fraud are: (1) a misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., intent to induce reliance; (4) justifiable reliance; and (5) resulting damages.  <u>Small Frits Cos., Inc.</u>, 30 Cal.4th 167, 173 (2003).  To state a claim for fraudulent concealment a plaintiff must plead five elements: (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.  <u>Kaldenbach v. Mutual of Omaha Life Ins. Co.</u>, 178 Cal.App.4th 830, 850 (2009).

Federal Rule of Civil Procedure 9(b) requires that, when fraud is alleged, "a party must state with particularity the circumstances constituting fraud. . . ."  Fed.R.Civ.P. 9(b).  The circumstances must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citations omitted).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  <u>Id.</u>  A party alleging fraud must "set forth more than the neutral facts necessary to identify the transaction."  <u>Id.</u>  Where a plaintiff asserts claims based on fraudulent conduct against multiple defendants, the plaintiff is required to "identify the role of each defendant in the alleged fraudulent

scheme."  Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) (internal brackets and citation omitted).  "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993).

In support of her fraud claim, the SAC alleges that "[f]rom December 2006 through March 2008, Gomez, Legent, and TradeRight failed to disclose, and intentionally concealed that they had swept [Plaintiff's] money into an account that they used as margin collateral and leverage to make risky investments on their own behalf and to earn fees from making such investments."  SAC ¶ 43.  In addition, the SAC alleges that, in January 2007, Gomez and AFC sent her a letter in in which they "misrepresented . . . that Enterprise was a trustworthy company that would handle [Plaintiff's] account without any significant changes."  Id. ¶ 44.  The SAC further alleges that "[u]pon the transfer of [Plaintiff's] account, Gomez and AFC failed to disclose and intentionally concealed that Enterprise and TradeRight were not trustworthy companies and that they were recommending that [she] transfer her account to Enterprise and TradeRight because Gomez and AFC received financial gain from doing so."  Id. ¶ 45.  The SAC also alleges that Gomez and AFC "concealed and failed to disclose that the account was being transferred . . . to give Enterprise and Gomez full discretion over the account."  Id.

According to Plaintiff, Gomez, Legent, and TradeRight's activities in support of their fraud allowed each of them to avoid risk, earn generous commissions from the margin trading, thus providing the requisite intent to defraud.  SAC ¶ 46.  Plaintiff asserts that she would never have transferred her account and would have immediately revoked it from Gomez, AFC, Legent, and TradeRight if they would have disclosed to her "the above facts."  Id. ¶ 47.  Instead, Plaintiff alleges that she reasonably relied upon their misrepresentations and concealments to her detriment by allowing them to continue to manage her account.  Id.  She further alleges that as a proximate result of the "above" false representations and concealment, she has suffered and will continue to suffer, damages in excess of $600,000.  Id. ¶ 49.

Gomez and AFC move to dismiss Plaintiff's fraud claim on the ground that it is factually impossible that "from December 2006 through March 2008, Gomez . . . intentionally concealed that [she] had swept [Plaintiff's] money into an account . . . used for margin collateral and leverage to make risky investments" because Plaintiff alleges that her account was transferred to Legent in January 2007 and Gomez was never a Legent registered representative. Defs.' Mtn. at 9. According to Gomez and AFC, Gomez had no custody, control, or duty with respect to Plaintiff's accounts after they were transferred to Legent in January 2007. Id. In addition, Gomez and AFC move to dismiss Plaintiff's fraud claim on the ground that there are no allegations in the SAC demonstrating that they had knowledge of the untrustworthiness of Enterprise and TradeRight. Id. Finally, Gomez and AFC argue that dismissal of Plaintiff's fraud claim is appropriate because Plaintiff failed to plead the required "who, what, when, where, and how" to support all of the elements of this claim. Id. at 10.

The Court finds that Gomez and AFC have failed to demonstrate that dismissal of Plaintiff's fraud claim on the ground of "factual impossibility" is warranted. Although the SAC is not a model of clarity, accepting as true the well-pleaded allegations of material fact as required on a motion to dismiss, Plaintiff has alleged sufficient facts demonstrating that it is plausible that Gomez had custody, control, and/or a duty with respect to Plaintiff's account after it was transferred to Legent in or around February 2007. Specifically, the SAC alleges that Gomez managed Plaintiff's investments for over 30 years, including in parts of 2007 and 2008, that Gomez was Plaintiff's registered agent "through at least September 2007," that Gomez was an agent or employee of TradeRight, that Legent enabled TradeRight to misuse accounts, that Gomez worked with TradeRight and Legent to transfer shares from Plaintiff's account into an omnibus account at Legent in March and May 2007, that Gomez was Plaintiff's registered representative responsible for Plaintiff's account at the time Plaintiff's funds were "swept" into the omnibus account, that "[t]hroughout 2007 Legent, TradeRight, and Gomez used the funds from Plaintiff's qualified retirement account as collateral for margin trading, including speculative options

1 and short trading," and that "Gomez knew that the paperwork signed by [Plaintiff] did not

2 permit margin trading and the law prohibits qualified accounts to be used for margin

3 trading."  SAC ¶¶ 3, 5, 13, 24-27.  Accordingly, Gomez and AFC's motion to dismiss the

4 fraud claim on the ground of "factual impossibility" is DENIED.[4]

5       To the extent Gomez and AFC move to dismiss Plaintiff's fraud claim on the ground

6 that there are no allegations in the SAC demonstrating that they had knowledge of the

7 untrustworthiness of Enterprise and TradeRight, the Court finds that dismissal is

8 appropriate.  The allegations in the SAC are insufficient to establish the element of

9 knowledge.  While Rule 9(b) requires a party to state with particularity the circumstances

10 constituting fraud, malice, intent, knowledge, and other conditions of a person's mind may

11 be alleged generally.  Fed.R.Civ.P. 9(b).  This does not mean, however, that conclusory

12 allegations of knowledge will suffice.  Iqbal, 129 S.Ct. at 1954.  Rather, Rule 9(b) merely

13 excuses a party from pleading scienter under an elevated pleading standard; the "less

14 rigid—though still operative—strictures of Rule 8" must be satisfied.  Id.

15       A review of the allegations in the SAC regarding Gomez and AFC's knowledge of

16 the trustworthiness of Enterprise reveal that they are largely identical to the allegations that

17 the Court found insufficient in the FAC.  The SAC alleges that in January 2007 Gomez and

18 AFC misrepresented to Plaintiff that Enterprise was a trustworthy company that would

19 handle her account without any significant changes.  SAC ¶ 44.  The SAC further alleges

20 that, upon the transfer of her account, Gomez and AFC failed to disclose and intentionally

21 concealed that Enterprise and TradeRight were not trustworthy companies and that they

22 were recommending that Plaintiff transfer her account to Enterprise and TradeRight

23 because they received financial gain from doing so.  Id. ¶ 45.  The SAC also alleges that

24 Gomez and AFC concealed and failed to disclose that Plaintiff's account was being

25

26         [4] To the extent that Gomez and AFC argue that it is not possible that AFC could
have "swept Plaintiff's Legent accounts into an omnibus account at Legent in March 2007,

27 or wrongfully used Plaintiff's Legent accounts as collateral for margin trading 'throughout
2007,' " the Court notes that Plaintiff's fraud claim does not allege that AFC engaged in this

28 conduct.

1    transferred in such a manner to give Enterprise and Gomez full discretion over the account.

2    Id. ¶ 45.

3         These allegations do not show that Gomez and AFC had knowledge of the

4    untrustworthiness of Enterprise, and therefore, also had knowledge of the falsity of their

5    representations regarding Enterprise.  While the SAC alleges that Gomez and AFC should

6    have refused to transfer Plaintiff's account to Enterprise because Enterprise "had already

7    been found to be unlawfully making trades without a license, and Gomez and AFC knew or

8    should have known of such unlawful activities," SAC ¶ 14, the SAC does not set forth any

9    facts supporting this conclusion.  As such, the Court finds that Plaintiff has not pled

10   sufficient facts establishing that Gomez or AFC had actual knowledge that Enterprise or

11   TradeRight was an untrustworthy company.  See Iqbal, 129 S.Ct. at 1950 (conclusory

12   allegations or allegations that are no more than a statement of a legal conclusion are not

13   entitled to the assumption of truth).  Plaintiff's conclusory claim that Gomez and AFC knew

14   or should have known that Enterprise was not a trustworthy company is "devoid of further

15   factual enhancement," and, without more, is insufficient to withstand a motion to dismiss.

16   Id. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

17   elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked

18   assertion[s]' devoid of 'further factual enhancement.' ") (citation omitted).  Plaintiff has not

19   pled sufficient factual matter, accepted as true, to establish that it is plausible that

20   Defendant had knowledge that Enterprise or TradeRight was untrustworthy.  Id.

21   Accordingly, to the extent Plaintiff's fraud claim is predicated on AFC and Gomez's

22   misrepresentation and concealment regarding the trustworthiness of Enterprise and

23   TradeRight, it is DISMISSED.  However, because it is not clear at this juncture that the

24   SAC cannot possibly be cured by the allegation of other facts, Plaintiff is granted leave to

25   amend her fraud claim.

26        Finally, as for Gomez and AFC's conclusory contention that Plaintiff has not pled

27   the required "who, what, when, where, and how" to support all of the elements of her fraud

28   claim, the Court finds that they have failed to show Plaintiff's fraud claim should be

dismissed on this ground.  The two-sentence argument made in support of this contention is woefully inadequate to demonstrate that dismissal is appropriate.  Gomez and AFC's motion papers do not explain why specific allegations of fraud or concealment fail to satisfy the pleading standard under Rule 9(b).  Specifically, they have failed to explain why the allegations do not adequately notify them of the particular misconduct alleged to enable them to prepare an adequate answer.  Accordingly, because this argument is unsupported, it is uncompelling.  It is not the role of the Court to make the parties' arguments for them. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

### 2.   Conspiracy Claims

Plaintiff's second and fourth claims allege a conspiracy to commit fraud and a conspiracy to breach fiduciary duty, respectively.  To establish a civil conspiracy, a plaintiff must show: (1) the formation and operation of a conspiracy; (2) wrongful conduct in furtherance of a conspiracy; and (3) damages arising from the wrongful conduct.  Kidron v. Movie Acquisition Corp., 40 Cal.App.4th 1571, 1581 (1995).  Civil conspiracy is not an independent tort, but requires a showing that two or more persons have agreed to a common plan or design to commit a tortious act.  Id. at 1581-1582.  Conspiring defendants must have actual knowledge that a tort is planned, concur in the tortious scheme with knowledge of its unlawful purpose, and intend to aid in its commission.  Id. at 1582.  Where a plaintiff alleges a conspiracy to commit fraud, Rule 9(b) requires more than conclusory allegations of conspiracy, and a plaintiff must allege with sufficient particularity that defendants reached some explicit or tacit understanding or agreement.  Fidelity Nat. Title Ins. Co. v. Castle, 2011 WL 6141310, at *7 (N.D. Cal. 2011) (internal citations omitted).

With respect to Plaintiff's second claim for conspiracy to commit fraud, the SAC alleges that Gomez, Legent, and TradeRight "actively aided, abetted, and conspired with each other to perform the acts or omissions detailed above, with full knowledge of the false representations and deliberate material omissions, all for their own personal gain and benefit."  SAC ¶ 52.  The SAC further alleges that Gomez, Legent, and TradeRight

"defrauded Plaintiff" by using her "assets for margin trading . . . to her detriment" and that "[e]ach of them had knowledge of this through their work together in that endeavor and each provided substantial assistance to the other to that end." Id. ¶ 53. The SAC also alleges that Gomez and AFC "work[ed] together to defraud Plaintiff" when they "failed to disclose the untrustworthiness of Legent and TradeRight prior to the transfer of [her] account." Id. ¶ 54.

With respect to Plaintiff's fourth claim for conspiracy to breach fiduciary duty, the SAC alleges that "Gomez, AFC, Legent, and TradeRight actively aided, abetted, and conspired with each other to perform the acts or omissions detailed above, with full knowledge of the special common law duties of trust and confidence owed to [Plaintiff] and with the intent to aid in the breach of those obligations, all for their own personal gain and benefit." SAC ¶ 69. The SAC further alleges that Gomez, Legent, and TradeRight "breached their fiduciary duty to Plaintiff" by using her "assets for margin trading . . . to her detriment," and that "[e]ach of them had knowledge of this through their work together in that endeavor and each provided substantial assistance to the other to that end." Id. ¶ 70. The SAC also alleges that Gomez and AFC "worked together to breach their fiduciary duty to Plaintiff" when they "failed to disclose the untrustworthiness of Legent and TradeRight prior to the transfer of [her] account." Id. ¶ 71.

The Court finds that the foregoing allegations are insufficient to support a cognizable claim for conspiracy. The allegations in support of Plaintiff's conspiracy claims are essentially a reiteration of the allegations alleged in support of Plaintiff's claims for fraud and breach of fiduciary duty, with the added language that Defendants "conspired with each other" and "worked together." The SAC, like the FAC, does not allege sufficient facts establishing the formation of a conspiracy. Instead, the SAC contains conclusory allegations of a conspiracy, which are insufficient to state a cognizable claim for relief.

Specifically, as for Plaintiff's conspiracy to commit fraud claim, the allegations in the SAC do not satisfy the pleading standard under Rule 9(b). The SAC does not allege with sufficient particularity facts establishing that Gomez, Legent, TradeRight, and AFC

reached some explicit or tacit understanding or agreement to defraud her through false representations or material omissions.  <u>See</u> <u>Benson v. JP Morgan Chase Bank N.A.</u>, 2010 WL 1526394, at *6 (N.D. Cal. 2010) (dismissing conspiracy claim where the complaint lacked factual allegations showing an agreement between defendants to defraud plaintiff). The SAC lacks factual allegations showing that Gomez and any of the corporate entities agreed to a common plan or design to defraud Plaintiff through misrepresentations or the concealment of material facts.  Instead, the SAC contains the conclusory assertion that Gomez, Legent, and TradeRight "conspired with each other" to defraud Plaintiff by using Plaintiff's assets for margin trading, and that "[e]ach of them had knowledge of this through their work together in that endeavor and each provided substantial assistance to the other to that end."  SAC ¶¶ 52-53.  The SAC also contains the conclusory assertion that Gomez and AFC "work[ed] together" to defraud Plaintiff when they "failed to disclose the untrustworthiness of Legent and TradeRight prior to the transfer of [her] account."  <u>Id.</u> ¶ 54. These conclusory assertions are insufficient to satisfy the pleading requirements under Rule 9(b).

As for Plaintiff's conspiracy to breach fiduciary duty claim, the allegations in the SAC fail to satisfy the pleading standard under Rule 8.  Plaintiff's claim for conspiracy to breach a fiduciary duty is not supported by sufficient facts to infer that an agreement was made to commit a tortious act.  The SAC does not allege facts plausibly suggesting that Gomez and any of the corporate entities agreed to a common plan or design to breach a fiduciary duty owed to Plaintiff.  Instead, the SAC contains conclusory assertions devoid of further factual enhancement.  For instance, the SAC asserts that Gomez, Legent, and TradeRight "conspired with each other" to breach their fiduciary duty to Plaintiff through their "work together" in using Plaintiff's assets for margin trading.  SAC ¶¶ 69-70.  The SAC also asserts that Gomez and AFC "work[ed] together" to breach their fiduciary duty to Plaintiff when they "failed to disclose the untrustworthiness of Legent and TradeRight prior to the transfer of [her] account."  <u>Id.</u> ¶ 71.  These conclusory assertions are insufficient to satisfy the pleading requirements under Rule 8.  <u>See</u> <u>Iqbal</u>, 129 S.Ct. at 1949 ("A pleading

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do' "); see also Twombly, 550 U.S. at 557 (a complaint is insufficient if it tenders "naked assertions" devoid of "further factual enhancement").  In short, because the SAC lacks factual matter to plausibly suggest that an agreement was made to breach a fiduciary duty owed to Plaintiff, it fails to state a claim for unlawful conspiracy to breach a fiduciary duty.  Twombly, 550 U.S. at 555-556.

Accordingly, for the reasons stated above, Plaintiff's second and fourth claims for conspiracy are DISMISSED.  However, because it is not clear at this juncture that Plaintiff cannot amend the SAC to state cognizable claims for conspiracy to commit fraud and conspiracy to breach a fiduciary duty, these claims are dismissed with leave to amend.

### 3.   Breach of Fiduciary Duty Claim

To state a claim for breach of fiduciary duty, a plaintiff must allege facts showing: (1) the existence of a fiduciary relationship; (2) a breach of that duty; and (3) resulting damages.  See Brown v. Cal. Pension Admin. & Consult. Inc., 45 Cal.App.4th 333, 347-348 (1996).  "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law."  City of Hope Nat. Med. Ctr. v. Genentech, Inc., 43 Cal.4th 375, 386 (2008) (internal quotation marks omitted).

The SAC alleges that "Defendants" each owed an "extremely high fiduciary duty to [Plaintiff] by virtue of their relationship to her, their total and complete discretion over her finances, and their longstanding relationship of trust and confidence."  SAC ¶ 59.  The SAC further alleges that "Defendants" owed a fiduciary duty to Plaintiff to "manage the assets in her best interests, pursuant to her financial goals and the authorized level of risk."  Id. ¶ 60.  According to Plaintiff, "Defendants" breached their fiduciary duty to her "by investing her assets in speculative investment strategies that were contrary to the agreed-upon objectives of [Plaintiff].  TradeRight, Legent, and Gomez used [her] assets to provide margin collateral for trading strategies that were not intended to benefit [Plaintiff], which caused her to suffer financial loss."  Id.  Furthermore, the SAC alleges that "Defendants" breached

1   their fiduciary duty to her "by employing an investment strategy that was not reasonably

2   intended to benefit [her], and caused her financial loss."  Id.  The SAC also alleges that

3   "Defendants" breached their fiduciary duty to Plaintiff by placing their interest ahead of

4   Plaintiff's for their own financial gain at her expense.  Id. ¶ 61.

5          The Court finds that Plaintiff has sufficiently pled a cognizable breach of fiduciary

6   duty claim against Gomez.  The SAC alleges that Gomez managed Plaintiff's investments

7   for over thirty years, including in parts of 2007 and 2008, and that she undertook a special

8   relationship of trust and confidence in managing Plaintiffs account, which provided her

9   with "full discretion" as to how the account was managed.  SAC ¶¶ 3, 18.  The SAC further

10  alleges that Gomez breached her fiduciary duty to Plaintiff by, among other things,

11  investing in speculative investment strategies that were contrary to Plaintiff's objectives and

12  by employing an investment strategy that was not reasonably intended to benefit Plaintiff,

13  and caused her financial loss.  Id. ¶ 60.  Accordingly, Gomez and AFC's motion to dismiss

14  the breach of fiduciary claim as to Gomez is DENIED.

15         Plaintiff, however, has failed to sufficiently plead a breach of fiduciary claim against

16  AFC.  As set forth above, the allegations in support of this claim establish that it is

17  predicated on the investment of Plaintiff's assets in speculative investment strategies.  See

18  SAC ¶ 60.  However, the SAC does not specifically allege that AFC was involved in

19  investing Plaintiff's assets in speculative investment strategies.  Indeed, the SAC alleges

20  that the investment in speculative investment strategies took place after AFC transferred

21  Plaintiff's account to Enterprise.  The SAC alleges that "[s]oon after Gomez and AFC

22  transferred [Plaintiff's] account to Enterprise, Enterprise, TradeRight, Gomez and Legent

23  swept [her] account without her knowledge or consent into an omnibus account that

24  Defendants used as margin collateral to fund risky investments."  Id. ¶ 19.  Accordingly, the

25  breach of fiduciary claim as to AFC is DISMISSED.  However, because it is not clear at

26  this juncture that Plaintiff cannot amend the SAC to state a cognizable claim for breach of

27  fiduciary duty against AFC, this claim is dismissed with leave to amend.

28  ///

### 4.    Negligence Claim

"The elements of a cause of action for negligence are . . . (a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." Ladd v. County of San Mateo, 12 Cal.4th 913, 917-918 (1996) (internal quotation marks omitted).   Here, like the FAC, the SAC sufficiently alleges a claim of negligence against Gomez and AFC.  Specifically, the SAC alleges that Gomez and AFC owed her a duty to use reasonable care in managing her finances because Gomez was her registered representative until at least September 2007, while AFC was her financial advisor and broker of record until at least January of 2007.  SAC ¶¶ 76-77. Further, the SAC alleges that Defendants, including Gomez and AFC, breached that duty by "acting irresponsibly, failing to perform due diligence, failing to supervise her portfolio or those managing her portfolio, failing to inquire about the margin investing by Enterprise, failing to make prudent investments and failing to inform [her]." Id. ¶ 78.  As a result of Defendant's conduct, Plaintiff alleges that she has suffered damages in excess of $600,000. Id. ¶ 79.

To the extent Gomez and AFC move to dismiss Plaintiff's negligence claim on the ground that it is time-barred, the Court rejects this argument, for the reasons discussed in its Order dated December 13, 2010.  The Court previously determined that this claim is not time-barred and Gomez and AFC have not demonstrated that the Court's previous determination is incorrect or that dismissal of this claim is appropriate based on the allegations added to the SAC.  Accordingly, Gomez and AFC's motion to dismiss Plaintiff's negligence claim is DENIED.

### 5.    Violations of Securities Laws and California State Blue Sky Laws

Plaintiff's sixth claim for relief alleges that "[t]he acts alleged herein are violations of 15 U.S.C. §§ 77q(a)(1)-(3) and 15 U.S.C. § 77l(a)(2) (provisions of the Securities Act of 1933), 15 U.S.C. § 78j(b) (the provision of the Securities and Exchange Act of 1934), 17 C.F.R. § 240.10b-5, and California Corporate Code §§ 25216(a)-(b) (provisions of the

1  Corporate Securities Law of 1968)."  SAC ¶ 81.  Plaintiff further alleges that, "in

2  connection with the purchase or sale of any security," Defendants "employ[ed] a device

3  scheme, or artifice to defraud [Plaintiff] as alleged above by making untrue statements of a

4  material fact and by omitting material facts in light of the circumstances under which they

5  were made; . . . engage[d] in the acts, practices, and courses of business alleged above, all

6  of which consisted of a fraud or deceit upon Plaintiff."  Id. ¶ 82.

7      In the Court's prior Order dismissing the FAC, the Court dismissed this claim on the

8  ground that Plaintiff failed to give the Defendants fair notice of what the claim is and the

9  grounds upon which it rests because Plaintiff failed to identify with particularity the

10  provisions of the Acts that Defendants are alleged to have violated, or how each Defendant

11  is alleged to have violated such provisions.  See Dkt. 26.  A review of the SAC reveals that

12  the allegations with respect to this claim are largely identical to allegations in the FAC,

13  except that Plaintiff has identified four statutes and one federal regulation that Defendants

14  have violated.[5]  While Plaintiff corrected the deficiency regarding her failure to identify

15  with particularity the provisions of the Acts that Defendants have violated, she failed to

16  allege sufficient facts establishing how each Defendant (e.g., Gomez, AFC) is alleged to

17  have violated the provisions of each of the Acts identified.  Thus, Plaintiff has failed to give

18  the Defendants fair notice of what the claim is and the grounds upon which it rests.

19  Twombly, 550 U.S. at 555; see also Jones v. Community Redevelopment Agency of City of

20  Los Angeles, 733 F.2d 646, 649 (9th Cir. 1984) (a pleading must give fair notice of what

21  the claim is and state the elements of the claim plainly and succinctly)

22      Indeed, this claim does not comply with Rule 8(a)(2)'s "short and plain statement"

23  requirement as it lumps together multiple securities law violations against multiple

24  Defendants under one claim for relief and then relies on the same factual allegations in

25  support of the disparate claims.  Further, the claim does not comply with the requirement of

26  Rule 8(d)(1) that each allegation in support of a claim be "simple, concise, and direct."  The

27

28  _____

   [5] Plaintiff also substituted the word "Defendants" with "Legent, TradeRight, Gomez, and AFC" in two places.  SAC ¶¶ 85-86.

allegations in support of this claim are confusing insofar as Plaintiff has not separately pled her different theories for relief, i.e., separated her different claims for relief and stated the elements of each claim plainly and succinctly.  See O'Donnell v. Elgin, J. & E. Ry. Co., 338 U.S. 384, 392 (1949) ("Pleadings will serve the purpose of sharpening and limiting the issues only if claims based on [one theory of recovery] are set forth separately from those based on [another theory of recovery].").

To the extent Gomez and AFC contend that Plaintiff's sixth claim for relief fails as a matter of law because there is "no claim that there was any purchase or sale of security," the Court finds that they have failed to establish dismissal is warranted on this ground. Gomez and AFC did not cite any case law or provide legal analysis demonstrating that dismissal is appropriate.  Accordingly, because this argument is unsupported, it lacks merit. See Indep. Towers of Wash., 350 F.3d at 929.

Similarly, to the extent Gomez and AFC contend that this entire claim should be dismissed on the ground that it is not pled with particularity, the Court finds that they have failed to demonstrate that dismissal is appropriate.  Other than argument in a footnote, Gomez and AFC's moving papers fail to cite any authority or provide legal analysis demonstrating that dismissal of Plaintiff's entire sixth claim for relief is appropriate on this ground.  As such, this argument lacks merit because it is unsupported. See Indep. Towers of Wash. v. Wash., 350 F.3d at 929.  With respect to the argument in the footnote, which seeks dismissal of Plaintiff's sixth claim for relief to the extent it is predicated on a violation of Rule 10b-5, the Court rejects this argument.  "A footnote is the wrong place for substantive arguments on the merits of a motion, particularly where such arguments provide independent bases for dismissing a claim not otherwise addressed in the motion." First Advantage Background Servs. Corp. v. Private Eyes, Inc., 569 F.Supp.2d 929, 935 n. 1 (N.D. Cal. 2008) (rejecting argument made in a footnote).  The Court is not only concerned with the location of the argument but with the substance of the argument.  The argument is conclusory and fails to demonstrate that dismissal is appropriate under the

1   pleading standard governing Rule 10b-5 claims set forth in <u>Zucco Partners, LLC v.</u>

2   <u>Digimarc Corp.</u>, 552 F.3d 981, 990-991 (9th Cir. 2009).

3          Accordingly, for the reasons stated above, this claim is DISMISSED.  However,

4   because it is not clear at this juncture that Plaintiff cannot amend this claim to state a

5   cognizable claim for relief, this claim is dismissed with leave to amend.  Any amended

6   pleading shall not combine multiple legal theories into a single claim for relief.  To the

7   extent Plaintiff seeks relief under more than one securities-related statute, she must present

8   her different theories for relief under separate claims for relief.  Plaintiff must also state

9   with particularity the circumstances constituting fraud.  <u>See</u> <u>Zucco</u>, 552 F.3d at 990 (Rule

10  9(b) "has long been applied securities fraud complaints").

11          **6.      Violation of Business and Professions Code § 17200 et seq.**

12         Plaintiff's seventh claim alleges that "Defendants" unfair and unlawful conduct

13  violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

14  SAC ¶¶ 92-93.  Specifically, the SAC alleges that "[t]he conduct of Defendants was

15  unlawful under the UCL, because it violated the rules of the Financial Industry Regulatory

16  Authority 'FINRA' and the Patriot Act as well as 15 U.S.C. §§ 77q(a)(1)-(3) and 15 U.S.C.

17  § 77l(a)(2) (provisions of the Securities Act of 1933), 15 U.S.C. § 78j(b) (provision of the

18  Securities and  Exchange Act of 1934), 17 C.F.R. § 240.10b-5, and California Corporate

19  Code §§ 25216(a)-(b) (provisions of the Corporate Securities Law of 1968)."  <u>Id.</u> ¶ 93.  The

20  SAC further alleges that "Defendants have engaged in the acts alleged above as a business

21  practice, including violations of the above statutes and regulations, and engag[ed] in a

22  pattern of unfair, deceitful and fraudulent practices as alleged above."  <u>Id.</u>

23         The UCL makes actionable any "unlawful, unfair or fraudulent business act or

24  practice."  Cal. Bus. & Prof. Code § 17200.  "Each prong of the UCL is a separate and

25  distinct theory of liability."  <u>Birdsong v. Apple, Inc.</u>, 590 F.3d 955, 959 (9th Cir. 2009).

26  "[A]n action based on [the UCL] to redress an unlawful business practice 'borrows'

27  violations of other laws and treats these violations . . . as unlawful practices, independently

28  actionable under section 17200 et seq. and subject to the distinct remedies provided

thereunder." <u>Farmers Ins. Exch. v. Super. Court</u>, 2 Cal.4th 377, 383 (1992) (quotation marks and citations omitted).  A business practice that is not unlawful may nonetheless be actionable as an "unfair" business practice.  <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal.4th 1134, 1143 (2003).  An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  <u>McDonald v. Coldwell Banker</u>, 543 F.3d 498, 506 (9th Cir. 2008).

Conduct is considered "fraudulent" under the UCL if the conduct is "likely to deceive." <u>Morgan v. AT & T Wireless Servs., Inc.</u>, 177 Cal.App.4th 1235, 1254 (2009).  A claim under this prong of the UCL is based on the reasonable consumer standard, which requires the plaintiff to "show that members of the public are likely to be deceived." <u>Williams v. Gerber Prods. Co.</u>, 552 F.3d 934 (9th Cir. 2008) (internal quotation marks omitted).  Although a UCL claim need not plead the elements of common law fraudulent deception, it must allege the existence of a duty to disclose, <u>Berryman v. Merit Prop. Mgmt., Inc.</u>, 152 Cal.App.4th 1544, 1557 (2007), as well as reliance, <u>In re Tobacco II Cases</u>, 46 Cal.4th 298, 328 (2009).  The fraudulent conduct must be alleged with particularity under Rule 9(b).  <u>Kearns</u>, 567 F.3d at 1125 (9th Cir. 2009).  Rule 9(b) requires the plaintiff to allege "the who, what, when, where, and how" of the alleged fraudulent conduct, <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," <u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

The Court finds that the SAC fails to state a cognizable UCL claim.  Plaintiff has not alleged sufficient facts demonstrating that Gomez or AFC engaged in conduct that is unlawful within the meaning of the UCL.  The SAC does not allege facts establishing that Gomez and AFC violated any of the laws upon which Plaintiff relies in support of her claim under the unlawful prong of the UCL.  Nor does the SAC allege sufficient facts to state a claim under the unfair or fraudulent prongs of the UCL.  The vague and conclusory allegations in support of this claim are precisely the type of "unadorned, the-defendant-

unlawfully-harmed-me accusation" that the Supreme Court has held is impermissible.  See Iqbal, 129 S.Ct. at 1949.  Indeed, Plaintiff's conclusory allegation that "Defendants" have engaged in "a pattern of unfair, deceitful and fraudulent practices as alleged above" is not sufficient to state an actionable claim under the pleading requirements of Rule 8, let alone the pleading requirements of Rule 9(b) that apply to the fraudulent prong of the UCL.  The allegations do not give Gomez and AFC fair notice of the grounds upon which the claim rests.  Twombly, 550 U.S. at 555.

Accordingly, Plaintiff's UCL claim is DISMISSED.  However, because it is not clear at this juncture that Plaintiff cannot amend the SAC to allege a cognizable claim under the UCL, this claim is dismissed with leave to amend.

## III.  **CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      Defendants Ruthe Gomez and Advisory Financial Consultants, Inc.'s motion to dismiss is GRANTED IN PART AND DENIED IN PART.  The motion is GRANTED IN PART AND DENIED IN PART as to Plaintiff's first claim for fraud and third claim for breach of fiduciary duty with leave to amend.  The motion is GRANTED as to Plaintiff's second claim for conspiracy to commit fraud, fourth claim for conspiracy to breach fiduciary duty, sixth claim for violations of securities laws and California State Blue Sky Laws, and seventh claim for violation of the UCL with leave to amend.  The motion is DENIED as to Plaintiff's fifth claim for negligence.

2.      Plaintiff shall have twenty-one (21) days from the date this Order is filed to file a third amended complaint consistent with this Order.  Plaintiff is advised that any additional factual allegations set forth in her third amended complaint must be made in good faith and consistent with Rule 11 of the Federal Rules of Civil Procedure.  The Court warns Plaintiff that the failure to timely file a third amended complaint may result in the dismissal of this action.

3.      A Case Management Conference is scheduled for **February 20, 2013 at 3:30 p.m.**  Prior to the date scheduled for the conference, the parties shall meet and confer and

prepare a joint Case Management Conference Statement.  Plaintiff is responsible for filing the joint statement no less than seven (7) days prior to the conference date.  The joint statement shall comply with the Standing Order for All Judges of the Northern District of California and the Standing Orders of this Court.  Plaintiff is responsible for setting up the conference call, and on the specified date and time, shall call (510) 637-3559 with all parties on the line.

        4.      This Order terminates Docket 49.

        IT IS SO ORDERED.

Dated: 2/5/13

                                       _____
                                       SAUNDRA BROWN ARMSTRONG
                                       United States District Judge